IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CV-97-F

| R. H. DONNELLEY CORPORATION | ) | |
| :--- | :--- | :--- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' Cross-Motions for Summary Judgment [DE-15, DE-21] and on Plaintiff's Motion Requesting Oral Argument.[1] [DE-25]. All briefing, responses and replies are complete. Accordingly, the motions are ripe for ruling.

## I. **PROCEDURAL HISTORY**

Plaintiff initiated this action by Complaint [DE-1] filed March 6, 2009, seeking the recovery of interest on federal income tax collected by Defendant for Plaintiff's 1988 tax year pursuant to 26 U.S.C. § 6601. Defendant filed its Answer [DE-13] on June 26, 2009, generally denying the allegations. On July 1, 2009, Defendant moved for summary judgment. *See* [DE-15]. On August 20, 2009, Plaintiff filed a cross-motion for summary judgment [DE-21] and a Response [DE-22] in opposition to Defendant's motion, to which Defendant filed a Reply [DE-23] on September 2, 2009. Defendant filed a Response [DE-23] in opposition to Plaintiff's motion on September 2, 2009, to which Plaintiff filed a Reply [DE-24] on September 21, 2009.

---

[1] Plaintiff states this case "involv[es] complex provisions of the Internal Revenue Code concerning waiver of restrictions on assessments and the accrual of interest on underpayments," and accordingly requests oral argument on the parties' Cross-Motions for Summary Judgment. Pursuant to this district court's Local Rules of practice and procedure, motions are determined without a hearing unless ordered otherwise by the court. Local Civil Rule 7.1(i), EDNC. No deviation from the local rule is warranted in this case. Accordingly, Plaintiff's Motion for an Oral Argument [DE-25] is DENIED.

## II. STATEMENT OF FACTS

Plaintiff timely filed its 1988 income tax return in September 1989. In March 1994, the IRS proposed a tax deficiency of $46,848,383. On March 21, 1994, Plaintiff signed Form 870 Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment ("Form 870"), agreeing to the assessment of the tax deficiency, and submitted prepayments for the tax deficiency and accrued underpayment interest ($28,141,031.50) contemporaneously with Form 870. *See* Form 870, Ex. B [DE-15.4]. The IRS, however, did not formally make the assessment and issue a notice and demand to Plaintiff for payment of the first 1988 tax deficiency until December 12, 1994.

Subsequently, on May 21, 2001, the IRS assessed a second tax deficiency for the 1988 tax year, and Plaintiff paid in full the second deficiency and interest thereon. On April 13, 2005, Plaintiff timely filed Form 843 Claim for Refund and Request for Abatement ("Form 843") for the 1988 tax year in the amount of $13,455,022.96. *See* Form 843, Ex. A [DE-1.2]. On December 12, 2005, Plaintiff received a refund in the amount of $5,746,786.05. *See* Ex. B [DE-1.3]. Plaintiff seeks to recover from Defendant the balance ($7,709,022.96)[2] of the amount claimed on Form 843, plus interest thereon as allowed by law. Complaint [DE-1] at p. 3.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment "bears the initial

---

[2] The difference between the refund claimed ($13,455,022.96) and the refund granted ($5,746,786.05) is $7,708,236.91. Plaintiff does not explain its reasoning for seeking an additional $786.05.

2

responsibility of informing the district court of the basis of its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can meet this burden "by showing that there is an absence of evidence to support the nonmoving party's case." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other factors immaterial." *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The court views the evidence in the light most favorable to the non-moving party, affording that party the benefit of all reasonable inferences. *See Rein v. United States Patent & Trademark Office*, 553 F.3d 353, 358 (4th Cir. 2009). However, "conclusory statements, without specific evidentiary support" are insufficient to create a genuine issue of fact for trial. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998).

Here, both parties move for entry of summary judgment, thereby acknowledging the absence of any genuine issue of material fact necessitating a trial. This court's task is to determine whether either party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## IV. ANALYSIS

Plaintiff contends that the "use of money" principle entitles it to an interest suspension on a portion of the second 1988 tax deficiency for the period April 21, 1994, through December 12, 1994 ("870 Waiver Period") – the time period during which Defendant had the use of Plaintiff's advance payments of the first proposed tax deficiency and underpayment interest thereon to which Defendant was not yet entitled. Pl.'s Mem. in Supp. of Mot. for Summ. J. at 22 ("Pl.'s Mem."). Defendant disputes the applicability of the "use of money" principle to this factual situation. Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. at 2 ("Def.'s Resp.").

3

A.  *870 Waiver Period*

Some background here is helpful. Under section 6212(a) of the Internal Revenue Code ("the Code"), if the IRS determines that there is a tax deficiency, it may send a notice of deficiency to the taxpayer. 26 U.S.C. § 6212(a). The assessment and collection of the deficiency is subject to restrictions, which the taxpayer has the option of waiving via the execution and return of Form 870. *See* 26 U.S.C. § 6213(a), (d). As expressly provided in Form 870, by signing it, the taxpayer agrees "to the immediate assessment and collection of any deficiencies . . ., plus any interest," without requiring the IRS to mail a notice of deficiency. *See* Form 870, Ex. B [DE-15.4]. Section 6303(a) of the Code, however, requires notice and demand for payment of the tax as a condition precedent to the taking of additional steps to enforce its collection and payment. *See* 26 U.S.C. § 6303(a) (stating "after the making of an assessment . . . [the Secretary shall] give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof").

A taxpayer wishing to stop the running of interest on a proposed deficiency that it does not plan to contest can do so by executing Form 870. If the IRS fails to make notice and demand for payment within thirty days after the waiver is filed, section 6601(c) provides that underpayment interest pursuant to section 6601(a)[3] will not be charged from the end of the thirty-day period until notice and demand are made. *See* 26 U.S.C. § 6601(c), (e)(3).

Here, on March 21, 1994, Plaintiff submitted Form 870 *accompanied by prepayments for the first 1988 tax deficiency and the accrued interest thereon. Accordingly, Plaintiff's remittance of the full amount of its debt obviated the applicability of Section 6601(c).* Plaintiff argues, however, that as a result of Defendant's failure to make timely notice and demand with

---

[3] 26 U.S.C. § 6601(a) provides that interest on a taxpayer's income liabilities accrues "from the last date prescribed for payment . . . to the date paid."

4

respect to the first tax deficiency, Defendant had the use of Plaintiff's prepayment of $74,822,115.59[4] during the 870 Waiver Period - that is, from April 21, 1994, to December 12, 1994, the time period during which interest would have stopped accruing on the first 1988 tax deficiency had Plaintiff waited to submit its payments upon issuance of notice and demand. Accordingly, Plaintiff concludes that Defendant improperly assessed and collected underpayment interest pursuant to section 6601(a) on $74,822,115.59 worth of the second 1988 tax deficiency during that period.

B.  *"Use of Money" Principle*

In general, the government is entitled to interest on a deficiency in tax for the period that the tax was due and unpaid. 26 U.S.C. § 6601(a); *see Avon Prod., Inc. v. United States*, 588 F.2d 342, 343 (2d Cir. 1978) (noting that "interest is not a penalty but is intended only to compensate the Government for delay in payment of a tax"). The general concept underlying the Code's interest provisions is the "use of money" principle which provides that as between the government and a taxpayer, interest generally should be imposed upon the one who has the use of the other's funds. *See Marsh & McLennan Companies, Inc. v. United States*, 302 F.3d 1369, 1381 (Fed. Cir. 2002) (citation omitted). Indeed, "[c]ompensation for the use of money is the principle rationale for charging interest with respect to both overpayments and underpayments." *Id.* at 1381 n.10 (internal citation omitted).

Under section 6601(a), the IRS may impose interest only "when a tax becomes both due and unpaid." *Avon*, 588 F.2d at 344. Here, Plaintiff maintains that it was improper for

---

[4] The prepayment submitted by Plaintiff totaled $74,989,414.50. *See* Pl.'s Mem. at 2 [DE-22]; *see also* 490 Activity Summery-R.H. Donnelly at 3 [DE-15.6] However, in its argument, Plaintiff uses the figure $74,822,115.59 as the amount by which the second tax deficiency should be reduced for interest assessment purposes during the 870 Waiver Period. *See id.* at 6. Plaintiff explains the $167,298.91 difference "is attributable to the omission of prior transcript activity, most notably the interest impact of a credit elect transfer, when the payment amount was computed." Pl.'s Reply to Def.'s Resp. at 2 n.1 ("Pl.'s Reply").

5

Defendant to assess any interest on $74,822,115.59 worth of the *second* 1988 tax deficiency during the 870 Waiver Period because during that period, the government had use of Plaintiff's money for the *first* 1988 tax deficiency - a debt obligation that did not fall due until the IRS issued notice and demand therefor in December 1994. Plaintiff relies on the following authorities in support of its "use of money" argument: *Am. Propeller & Mfg. Co. v. United States*, 300 U.S. 475 (1937); *Avon*, 588 F.2d at 343 and *May Dep't Stores Co. and Subsidiaries v. United States*, 36 Fed. Cl. 680 (1996). *See* Pl.'s Mem. at 9-10. However, the court finds these cases inapposite.

In *American Propeller*, the plaintiff sought to recover an amount due from the government under certain contracts. The government counterclaimed for a deficiency income and excess profits tax assessment. The Supreme Court noted that the government was indebted in 1924 to the taxpayer in the sum of $119,413.04, against which there was at the same time a just counterclaim of $82,701.29, "so that if the account had been adjusted at that time instead of 12 years later, the government would have been obliged to pay [the taxpayer] the difference between these two sums." *Am. Propeller & Mfg. Co.*, 300 U.S. at 478. The Court held "[t]he inequity of allowing the government interest [under section 6601(a)] for 12 years [thereafter] . . . so as to bring the petitioner in debt to the government in the sum of over $21,000.00, is so gross as to be shocking." *Id.* Here, the Plaintiff had no "just counterclaim" to the funds it placed in the Government's possession, and no delay on the part of the Government resulted in the accrual of any additional interest.

For similar reasons, neither *Avon* nor *May* supports Plaintiff's position. In *Avon*, the taxpayer initially reported an overpayment on its 1967 return, and made a credit elect. *See Avon*, 588 F.2d at 343. Thereafter, it filed an amended return showing a 1967 deficiency, and the IRS later assessed an additional 1967 deficiency. *Id.* The IRS assessed interest on the deficiencies without regard to the credit elect overpayment. *Id.* The appellate court in *Avon*

held the interest assessment impermissible, and found that the credit elect overpayment could not be disregarded; interest on the deficiencies did not run until the date the credit elect overpayment was applied to the next year's tax. *Id.* at 346.

Likewise, in *May*, the court, relying on *Avon*, held that the IRS could not assess interest on a deficiency created by a credit election until the point in the following year when the credit elect was applied against the taxpayer's estimated tax. *May Dep't Stores*, 36 Fed. Cl. at 688. Accordingly, *Avon* and *May* stand for the proposition that if a taxpayer overestimates its tax for a particular year and elects to credit such overpayment against the following year's estimate, and then a deficiency in tax for the earlier year eliminates the overpayment, then interest on such deficiency runs only from the later time of the credit, not from the due date of the estimate, because the government has had use of the money in the interim.

Unlike *Avon* and *May*, there is no "credit election" here as would invoke the "use of the money" principle. Rather, Plaintiff owed a debt that it chose to discharge prior to its obligation to do so. Appealing to equity, Plaintiff asks the court to construe section 6601(a) as an implicit directive requiring the government, in effect, to provide an investment-like return on the prepayment. Plaintiff implies the government is treating two similar taxpayers differently. *See* Pl.'s Mem. at 12 [DE-22] ("Congress could not have intended to place a taxpayer who prepaid the tax shown on a Form 870 in a worse position than a taxpayer who does not pay the tax shown on Form 870 until presented with notice and demand."). However, as Plaintiff concedes, it made the choice of discharging a debt owed but not yet due prior to that required by statute rather than, for example, placing these funds in an interest-bearing account until issuance of notice and demand.

The statutes governing deficiency payments and notice and demand therefor are unambiguous. Plaintiff's election to remit the 1988 tax deficiency and interest prior to its obligation to do so was of its own volition and it cannot force the IRS to owe it interest as a result
7

of that choice. *Cf. Marsh*, 302 F.3d at 1381 ("Marsh argues that if it had sought a refund instead of making the credit elect in 1987, it would have had the use of those funds. This is true enough, but ... [t]here is no principle that requires that the taxpayer be treated the same whether it seeks a refund or a credit elect. ... The taxpayer could have sought a refund for the excess funds, or left the excess funds as an interest-bearing overpayment. A taxpayer that makes a credit elect has no one to blame but itself for the non-payment of interest on that amount") (*citing Avon*, 588 F.2d at 345). Finally, as the Supreme Court succinctly remarked, "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not ... and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Comm'r of Internal Revenue v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974) (citations omitted).

## V. CONCLUSION

For the reasons stated herein, the Plaintiff's Motions for Summary Judgment [DE-21] and for Oral Argument [DE-25] are DENIED, and the Defendant's Motion for Summary Judgment [DE-15] is ALLOWED. The Clerk of Court is DIRECTED to enter judgment for the Defendant and to close this case.

SO ORDERED.

This, the 9th day of December, 2009.

JAMES C. FOX
Senior United States District Judge